IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

| | | |
|---|---|---|
| DEMETRIUS KERON FORD, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | CV 115-034 |
| | ) | (Formerly CR 107-167) |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

_____

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**
_____

Petitioner, an inmate at FCC Yazoo City Low in Yazoo City, Mississippi, has filed with this Court a motion under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence. For the reasons set forth below, the Court **REPORTS** and **RECOMMENDS** the § 2255 motion be **DENIED** without an evidentiary hearing, this civil action be **CLOSED**, and a final judgment be **ENTERED** in favor of Respondent.

**I.    BACKGROUND**

   **A.    Indictment**

On December 13, 2007, a grand jury in the Southern District of Georgia charged Petitioner with: (1) conspiracy to use and carry a firearm during a crime of violence, in violation of 18 U.S.C. § 924(o) (Count One); (2) hijacking of a motor vehicle, in violation of 18 U.S.C. § 2119 (Counts Seventeen and Nineteen); and (3) using, carrying, and brandishing a firearm during a crime of violence, in violation of 18 U.S.C. § 924(c) (Counts Eighteen and Twenty). United States v. Ford, CR 107-167, doc. no. 61 (S.D. Ga. Nov. 13, 2007) ("CR

107-167"). Retained counsel Danny L. Durham represented Petitioner. (Id., doc. no. 142.)

**B.     Guilty Plea**

On April 2, 2008, Petitioner pleaded guilty to one count of hijacking a motor vehicle, a Dodge Charger (Count Nineteen), and one related count of using, carrying, and brandishing a firearm during the Charger hijacking, a crime of violence (Count Twenty). (Id., doc. nos. 166, 260.) As to Count Nineteen, the written plea agreement signed by Petitioner states that on May 21, 2007, Petitioner, "aided and abetted by others, did by force, violence, and intimidation, and with intent to cause death and serious harm, take a motor vehicle . . . and that [Petitioner's] guilty plea constitutes proof as to this count." (Id., doc. no. 165, p. 8.) As to Count Twenty, the written plea agreement states Petitioner, "aided and abetted by others, did knowingly use, carry, and brandish a firearm, during and in relation to a crime of violence, that is, hijacking a motor vehicle . . . ." Id. The written plea agreement also advised Petitioner that the United States Probation Office would prepare a presentence investigation report ("PSI") which would consider all of Petitioner's relevant conduct related to the offenses. Id. at 9.

During the change of plea hearing, United States District Judge Dudley H. Bowen, Jr., established Petitioner's competence to enter a guilty plea if he so desired. (Id., doc. no. 260 ("Rule 11 Tr."), p. 3.) Judge Bowen reviewed the charges and the maximum statutory penalties. (Id. at 3-5.) When asked, Petitioner confirmed he understood the possible penalties. (Id. at 6.)

Judge Bowen also explained the rights Petitioner would be waiving by pleading guilty, and Petitioner affirmed he clearly understood those rights. (Id. at 7-8.) Among the rights explained, Judge Bowen reviewed the right to trial by jury, the presumption of

2

innocence, the government's burden to prove guilt beyond a reasonable doubt, the right to present and cross-examine witnesses, and the right to remain silent. (Id.) Petitioner also affirmed no one had forced or pressured him to plead guilty, or made him any promises to induce him to plead guilty. (Id. at 9.) Nor had anyone promised, predicted, or prophesied Petitioner would receive a specific sentence. (Id. at 11-12.)

### C. Factual Basis for Plea

Next, Judge Bowen heard a factual basis for Petitioner's guilty plea from Investigator Dan Carrier with the Richmond County Sheriff's Office, Gang Task Force. (Id. at 12-20.) Investigator Carrier testified that on May 19, 2007, Petitioner, Rafael Milligan, and Matthew Roberts hijacked a 2006 BMW 325i. (Id. at 13-14.) The three men followed the owner of the vehicle to her home, two of the men emerged from the vehicle, and one pointed a firearm at the owner and forced her to the ground. (Id. at 13.) After the owner surrendered her keys, the two men drove off in her vehicle. (Id.) Later that day, Mr. Milligan called undercover officers and indicated he wanted to sell the stolen BMW. (Id.) After law enforcement recovered the BMW through the vehicle's GPS tracking system, Mr. Milligan called undercover authorities and advised them he no longer had the vehicle. (Id. at 14-15.) Then, Mr. Milligan began negotiating with undercover officers for the sale of a Dodge Charger which he did not yet have. (Id. at 15.)

Investigator Carrier further testified that on May 21, 2007, Mr. Milligan, Mr. Roberts, and Petitioner hijacked a blue Dodge Charger. (Id. at 15-17.) One of the men pointed a firearm at the two occupants of the vehicle, forced the occupants out, and drove off in the vehicle. (Id. at 18.) Later that day, the three men met with undercover agents to sell the stolen Charger. (Id. at 16.) After the parties agreed to terms, Petitioner drove Mr. Roberts to

3

the stolen vehicle. (Id. at 17.) Law enforcement attempted to apprehend Mr. Roberts and a high-speed chase ensued. (Id.) After Mr. Roberts abandoned the vehicle and fled on foot, he was apprehended. (Id.) Law enforcement then apprehended Mr. Milligan. During police interviews, Mr. Milligan stated Petitioner and Mr. Roberts were primarily responsible for hijacking the BMW and the Dodge Charger. (Id. at 18.) Mr. Milligan stated Mr. Roberts brandished the firearm when the BMW was hijacked, and Petitioner brandished the firearm when the Dodge Charger was hijacked. (Id.)

On cross examination, Investigator Carrier admitted he was unable to prove who actually brandished the weapon during the Dodge Charger hijacking. (Id. at 21.) When the Court asked Petitioner if he disagreed with any of Investigator Carrier's testimony, Petitioner asserted Messrs. Milligan and Roberts were responsible for hijacking the BMW, and Mr. Milligan was solely responsible for hijacking the Dodge Charger. (Id. at 22.) Petitioner claimed he drove Messrs. Roberts and Milligan to the BMW, and Mr. Milligan brandished the firearm during that hijacking. (Id. at 21.) Two days later, Petitioner and Mr. Milligan spotted a Dodge Charger. (Id. at 22.) Petitioner claimed he dropped Mr. Milligan off, drove away, and "didn't even see what took place." (Id. at 23.) Hijacking of the Dodge Charger was "all spur of the moment," and he did not know Mr. Milligan had a pistol. (Id. at 24.)

Upon further questioning, Petitioner admitted to willfully participating in the BMW highjacking, and willfully participating in the Charger hijacking by driving Mr. Milligan to the Charger and stopping so that Mr. Milligan could exit the vehicle for the express purpose of stealing the Charger. (Id. at 28-30.) Petitioner told Judge Bowen he was guilty of, and wanted to plead guilty to, the brandishing and hijacking charges related to the Charger as contained in Counts Nineteen and Twenty of the Indictment. (Id. at 30.)

4

Finding that Petitioner's admissions were sufficient to show Petitioner aided and abetted both offenses, Judge Bowen then summarized the proceedings as follows:

> [Petitioner] has acknowledged his guilt, he is certainly aware of his right to trial, he's aware of the maximum penalties, and with full knowledge of the consequences, of his own volition and after a thorough discussion of all of this with the Court and counsel, upon an ample factual basis he has elected to plead guilty, I will accept the plea in writing.

(Id.)

### D.  Sentencing

On April 21, 2008, nineteen days after Petitioner's change of plea, a U.S. probation officer interviewed Petitioner to determine if he qualified for an adjustment for acceptance of responsibility. (PSI ¶ 19.) As to the BMW hijacking, Petitioner admitted to following the BMW with intent to steal the vehicle. (Id. ¶ 21.) Petitioner claimed he saw Mr. Milligan brandish a firearm and left the scene after the hijacking. (Id.) As to the Charger hijacking, Petitioner asserted he dropped Mr. Milligan off near the vehicle and drove away without witnessing the hijacking. (Id. ¶ 22.) Petitioner claimed he never saw Mr. Milligan in possession of a firearm at the time of the Charger hijacking, but admitted he knew Mr. Milligan had one. (Id.) The PSI set Petitioner's adjusted offense level at twenty-five and applied a three level reduction for acceptance of responsibility, reducing Petitioner's total offense level to twenty-two. (Id. ¶¶ 34-36.)

At his sentencing on August 12, 2008, Judge Bowen asked Petitioner whether he read and discussed the PSI with his attorney, and Petitioner affirmed that he did. (CR 107-167, doc. no. 252, p. 3.) Judge Bowen then asked whether Petitioner or his attorney had any objections to the factual statements in the PSI to which Petitioner replied, "No, sir, your

5

Honor." (Id.) Accordingly, Judge Bowen adopted the statements in the PSI as the Court's findings of fact. (Id.) After hearing statements in mitigation from Petitioner, family, and friends, Judge Bowen imposed a sentence of 156 months imprisonment, consisting of seventy-two months for Count Nineteen, and eighty-four months for Count Twenty to be served consecutively. (Id., doc. nos. 197, 204.) Petitioner was also sentenced to five years of supervised release and ordered to pay restitution in the amount of $6,068.00. (Id., doc. no. 204.) Judgment was entered six days later, on August 18, 2008. (Id.)

### E. Subsequent Proceedings

Petitioner did not file an appeal, but filed the instant § 2255 motion more than six years later concerning his plea to the brandishing charge in Count Twenty. (Id., doc. no. 305.) In his § 2255 motion Petitioner argues: (1) the Supreme Court's holding in Rosemond v. United States, 134 S.Ct. 1240 (2014), is retroactively applicable on collateral review, thus the petition is timely under 28 U.S.C. § 2255(f)(3); (2) his guilty plea to Count Twenty was involuntary and unintelligent; (3) he is actually innocent of the offense charged in Count Twenty; and (4) he is entitled to an evidentiary hearing. (Id. at 1-2.)

In Rosemond, the Supreme Court held in order to prove aiding and abetting the offense of using or carrying a firearm during and in relation to a crime of violence, the government must show "that the defendant actively participated in the underlying drug trafficking or violent crime with advance knowledge that a confederate would use or carry a gun during the crime's commission." 134 S.Ct. at 1243. Petitioner argues his statements during the change of plea hearing demonstrate he did not have advance knowledge Mr. Milligan would use or carry a gun in the Charger hijacking. (CR 107-17, doc. no. 305, p. 11.) Respondent contends Petitioner procedurally defaulted his claims because Petitioner

6

failed to raise them on direct appeal, and cannot overcome procedural default through a showing of actual innocence. (Id., doc. no. 310, pp. 6-9.) As discussed below, Petitioner has procedurally defaulted his claims and cannot show actual innocence in order to overcome the procedural bar.

## II. DISCUSSION

### A. The § 2255 Motion is Untimely.

28 U.S.C. § 2255(f), as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), provides a one-year statute of limitations for § 2255 motions that runs from the latest of four possible dates:

1. the date on which the judgment of conviction becomes final;

2. the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;

3. the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

4. the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f).

Petitioner's judgment of conviction was entered on August 18, 2008, and because Petitioner did not file a direct appeal, his convictions and sentence became final ten days later. See United States v. Blaine, 490 F. App'x 253, 256 n.4 (11th Cir. 2010) ("[U]ntil December 1, 2009, former Rule 4(b) gave a criminal defendant ten days from the entry of the order appealed to file a notice of appeal."); Fed. R. App. P. 4(b)(1). Consequently, for the

7

purpose of AEDPA's one-year statute of limitations, Petitioner's conviction became final on August 28, 2008. 28 U.S.C. § 2255(f)(1). Therefore, the instant petition, executed on February 25, 2015, is outside the one-year statute of limitations and is untimely.

Petitioner asserts Rosemond qualifies him for a later statute of limitations under § 2255(f)(3). (Doc. no. 1, pp. 1-2.) Section 2255(f)(3) applies only if the right has been (1) newly recognized by the Supreme Court and (2) made retroactively applicable to cases on collateral review. 28 U.S.C. § 2255(f)(3); Dodd v. United States, 545 U.S. 353, 358-59 (2005). The Supreme Court has not declared Rosemond to be retroactive on collateral review, and all but one court to address this issue has determined Rosemond is not.[1] If Rosemond is not retroactive on collateral review, Petitioner's motion is untimely under 28 U.S.C. § 2255(f)(1).

Respondent does not argue Rosemond's retroactivity, although the only Court within the Eleventh Circuit to address this issue has determined Rosemond is not retroactive. See Nesbitt, 2016 WL 783881 at *3 (determining Rosemond did not apply to second or

---

[1] Compare United States v. Greene, No. 14-C-431-08-CR-124, 2015 WL 347833, at *2 (E.D. Wis. Jan. 23, 2015) (vacating judgment of conviction and applying Rosemond retroactively) with United States v. Davis, 750 F.3d 1186, 1192-93 (10th Cir. 2014) ("*After* Rosemond, a jury instruction on aiding and abetting §924(c) should address the defendant's advance knowledge of the gun.") (emphasis added); Nesbitt v. Rathman, No. 1:14-cv-606-SLB-TMP, 2016 WL 783881 (N.D. Ala. 2016) (holding Rosemond was not retroactive to second or successive habeas petition); Evans v. United States, No. 14-2170, 2015 WL 5838647, at *3 (W.D. Tenn. Oct. 7, 2015) ("The Supreme Court did not hold Rosemond to be retroactively applicable to cases on collateral review, and this court declines to do so."); Whitener v. United States, No. 3:14-CV-00600-MOC, 2014 WL 6808789, at *2 (W.D.N.C. Dec. 2, 2014) ("Rosemond is not retroactively applicable to cases on collateral review."); Minyana v. United States, 41 F.Supp.3d 343, 345 (S.D.N.Y. 2014) ("There is no indication that the Supreme Court intended for [Rosemond] to apply retroactively . . . ."); Martinez v. United States, No. 3:01-CR-229-L(02), 2014 WL 3361748, at *2 (N.D. Tex. July 9, 2014) ("Rosemond did not announce a new 'substantive' rule . . . the Supreme Court was clear that its Rosemond holding was dictated by established precedent.").

successive habeas petition). Thus, there is no reason to presume Rosemond applies retroactively, but even if it does, Petitioner's claims are still procedurally defaulted and he has failed to demonstrate cause and prejudice or actual innocence. See McDuffie v. United States, No. 12-20465-CR, 2016 WL 1730400, at *11 (S.D. Fla. Mar. 31, 2016), report and recommendation adopted, No. 15-21641, 2016 WL 1729839 (S.D. Fla. Apr. 29, 2016) (deferring retroactivity issue and finding petitioner's claims procedurally defaulted).

### B. Petitioner's Claims Are Procedurally Defaulted and He Cannot Demonstrate Cause and Prejudice or Actual Innocence.

Petitioner argues in light of Rosemond, his guilty plea to Count Twenty was involuntary and unintelligent because neither he, nor his counsel, nor the Court correctly understood the essential elements of the crime. (Doc. no. 1, p. 9.) In Rosemond, the defendant was charged with violating 18 U.S.C. § 924(c), using a firearm in connection with a drug-trafficking crime or crime of violence, and aiding and abetting that offense under 18 U.S.C. § 2. 124 S.Ct. at 1243. The district court instructed the jury to find a conviction for the latter offense if: "(1) the defendant knew his cohort used a firearm in the drug trafficking crime, and (2) the defendant knowingly and actively participated in the drug trafficking crime." Id. at 1244.

After the Tenth Circuit affirmed and found no error with the jury instructions, the Supreme Court vacated and remanded. The Supreme Court held in order to prove aiding and abetting the offense of using or carrying a firearm during and in relation to a crime of violence, the government must show "that the defendant actively participated in the underlying drug trafficking or violent crime with advance knowledge that a confederate would use or carry a gun during the crime's commission." Id. at 1243. Petitioner argues his

9

statements during the change of plea hearing demonstrate he did not have advance knowledge Mr. Milligan would use or carry a gun in the Charger hijacking. (Doc. no. 1, p. 11.)

"[T]he voluntariness and intelligence of a guilty plea can be attacked on collateral review only if first challenged on direct appeal." Bousley v. United States, 523 U.S. 614, 621 (1998). A ground of error is usually "available" on direct appeal when its merits can be reviewed without further factual development. Mills v. United States, 36 F.3d 1052, 1055 (11th Cir. 1994). Failure to raise a claim on direct appeal constitutes a default and to overcome a procedural bar, Petitioner must show both (1) cause excusing his procedural default, and (2) actual prejudice resulting from the errors of which he complains. Brown v. United States, 720 F.3d 1316, 1333 (11th Cir. 2013). "Cause" requires a showing of some external impediment preventing counsel or Petitioner from raising the claim previously. See Weeks v. Jones, 52 F.3d 1559, 1561 (11th Cir. 1995) (citing McCleskey v. Zant, 499 U.S. 467, 497 (1991)). To demonstrate prejudice, Petitioner "must shoulder the burden of showing, not merely that the errors at his trial [or sentencing] created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial [or sentencing] with error of constitutional dimensions." United States v. Frady, 456 U.S. 152, 170 (1982).

In the alternative, "[t]he merits of a procedurally defaulted claim may be reached, in very narrowly defined circumstances, if failure to address the claim would result in a 'fundamental miscarriage of justice.'" Berry v. United States, 468 F. App'x 924, 925 (11th Cir. 2012). A fundamental miscarriage of justice has occurred where "a constitutional violation has resulted in the conviction of someone who is actually innocent." Murray v.

Carrier, 477 U.S. 478, 495-96 (1986); see also Wyzykowski v. Dep't of Corr., 226 F.3d 1213, 1218-19 (11th Cir. 2000). Actual innocence "applies to a severely confined category: cases in which new evidence shows it is more likely than not that no reasonable juror would have convicted [the petitioner]." McQuiggin v. Perkins, 133 S.Ct. 1924, 1933 (2013) (internal quotations omitted) (quoting Schlup v. Delo, 513 U.S. 298, 329 (1995)); see also McKay v. United States, 657 F.3d 1190, 1196 (11th Cir. 2011). Actual innocence means "factual innocence, not mere legal insufficiency." Bousley, 523 U.S. at 624. "In cases where the Government has forgone more serious charges in the course of plea bargaining, petitioner's showing of actual innocence must also extend to those charges." Id.; United States v. Caso, 723 F.3d 215, 222 (D.C. Cir. 2013) (clarifying "more serious" also includes "equally serious" charges).

Courts must exercise restraint before expanding the exceptions to the procedural default rule. McKay v. United States, 657 F.3d 1190, 1198 (11th Cir. 2011) (citing Dretke v. Haley, 541 U.S. 386, 394 (2004) ("[I]t is precisely because the various exceptions to the procedural default doctrine are judge-made rules that courts as their stewards must exercise restraint, adding to or expanding them only when necessary.")). Societal interests in the finality of criminal judgments further counsel against a permissive scope of collateral review. See, e.g., Gilbert v. United States, 640 F.3d 1293, 1309-12 (11th Cir. 2011) (*en banc*) (explaining that the "critically important nature" of finality interests weigh against permissive interpretations of procedural rules in the habeas corpus context). It is with these principles in mind that the Court turns to Petitioner's motion.

### 1. Petitioner Cannot Demonstrate Cause and Prejudice.

Petitioner admits his claims are procedurally defaulted because he failed to raise the issue of the voluntariness of his guilty plea on direct appeal. (Doc. no. 1, pp. 11-12.) Petitioner does not attempt to overcome the procedural bar by showing cause and actual prejudice. (See generally doc. no. 1.) Indeed, Petitioner cannot demonstrate cause to excuse his procedural default. Although the Supreme Court has held a claim that "is so novel that its legal basis is not reasonably available to counsel" may constitute cause for a procedural default, Petitioner's claim does not qualify as such. Bousley, 523 U.S. at 622 (citing Reed v. Ross, 468 U.S. 1, 16 (1984)).

By the time of Petitioner's guilty plea, many defendants had already claimed they did not have knowledge a confederate would use or carry a firearm and raised challenges to the validity of their convictions for aiding and abetting under § 924(c). See United States v. Pendegraph, 791 F.2d 1462, 1466 (11th Cir. 1986) (holding conviction under § 924(c) must be supported by evidence showing defendant's knowledge gun would be used); United States v. Thomas, 987 F.2d 697, 702 (11th Cir. 1993) (finding evidence was not sufficient to support conviction for aiding and abetting codefendants under § 924(c)); United States v. McKinney, 135 F. App'x 313, 323 (11th Cir. 2005) (appeal from plea of guilty of aiding and abetting use of firearm in robbery where defendant claimed he did not have knowledge). Even if a direct appeal of Petitioner's guilty plea would have been futile, futility also cannot constitute cause for excusing a procedural default. Engle v. Issac, 456 U.S. 107, 130 n.35 (1982) ("futility cannot constitute cause if it means simply that a claim was 'unacceptable to that particular court at that particular time.'") Because Petitioner cannot demonstrate cause

to excuse his procedural default, Petitioner can only hope to bring his claim by showing he is actually innocent.

### 2. Petitioner Cannot Demonstrate Actual Innocence.

As an initial matter, even if Petitioner's actual innocence claim did not fail on its merits, which it does, Petitioner would not be entitled to relief because neither the Supreme Court nor the Eleventh Circuit has recognized actual innocence as a ground for habeas corpus relief, particularly in a non-capital case. See Herrera v. Collins, 506 U.S. 390, 417 (1993) (assuming without deciding that "in a capital case a truly persuasive demonstration of 'actual innocence' made after trial would render the execution of a defendant unconstitutional, and warrant federal habeas relief . . . ."); Jordan v. Sec'y, Dep't of Corrs., 485 F.3d 1351, 1356 (11th Cir. 2007) ("For what it is worth, our precedent forbids granting habeas relief based upon a claim of actual innocence, anyway, at least in non-capital cases."). Consequently, Petitioner's actual innocence claim does not provide him with relief.

Regardless, Petitioner's claim of actual innocence fails on its merits. Petitioner argues he is actually innocent because of his statement at the change of plea hearing that he did not know Mr. Milligan possessed a firearm at the time of the Charger hijacking. However, as memorialized in the PSI, Petitioner admitted to probation officials during his pre-sentence interview that, while he did not see Mr. Milligan in possession of a firearm at the time of the Charger hijacking, Petitioner "knew that he had one." (PSI ¶ 22.) At sentencing, Petitioner testified he reviewed the PSI with his attorney and did not object to the facts within the PSI. (CR 107-167, doc. no. 252, p. 3.) Petitioner's failure to object to the facts within the PSI constitutes admission of those facts and precludes any argument of error in them. United States v. Wade, 458 F.3d 1273, 1277 (11th Cir. 2006).

13

Petitioner's contrary statement at his change of plea hearing does not amount to "new evidence," and does not show a likelihood that no reasonable juror would have convicted him. See McQuiggin, 133 S.Ct. at 1933. Furthermore, Petitioner's signed plea agreement provides that Petitioner "aided and abetted by others, did, by force, violence and intimidation, and with intent to cause death and serious bodily harm, take a motor vehicle . . . and brandish[ed] a firearm, during [the] hijacking." (CR 107-167, doc. no. 165, p. 8.) By signing the plea agreement, Petitioner agreed he understood the terms of the plea agreement, and affirmed the facts set forth in the plea agreement were true and accurate. (Id. at 14.)

In cases where the government has foregone more serious charges in the course of plea bargaining, a petitioner's showing of actual innocence must also extend to those charges. Caso, 723 F.3d at 222. Here, in the course of plea bargaining, the government agreed to dismiss Counts Seventeen and Eighteen, in exchange for Petitioner's guilty plea to Counts Nineteen and Twenty, equally serious charges. Counts Seventeen and Eighteen charged Petitioner with hijacking the BMW and using, carrying, or brandishing a firearm during the hijacking. (CR 107-167, doc. no. 61.) Petitioner's guilt as to the BMW hijacking is not in dispute; Petitioner admitted to willfully participating in the BMW hijacking. (Rule 11 Tr. 28-30.) Consequently, Petitioner cannot demonstrate actual innocence.

Petitioner also cannot demonstrate actual innocence because he is liable under a Pinkerton theory of liability even if he had no advance knowledge of Mr. Milligan's gun possession. 328 U.S. 640, 645-48 (1946). Under Pinkerton, a defendant can be held liable for all reasonably foreseeable offenses committed by co-conspirators during and in furtherance of the conspiracy. Id.; United States v. Diaz, 248 F.3d, 1065, 1098-1100 (11th Cir. 2001). Petitioner need not have "actual knowledge of those acts, so long as [Petitioner]

14

played more than a minor role in the conspiracy or had actual knowledge of at least some of the circumstances and events culminating in the reasonably foreseeable event." United States v. Baker, 432 F.3d 1189, 1235 (11th Cir. 2005). Although Petitioner argues conspiracy was not charged, Pinkerton liability can apply regardless of whether it was specified in the indictment or charged. (Doc. no. 5, p. 2); see United States v. Zackery, 494 F.3d 644, 649 (8th Cir. 2007) (upholding conviction under Pinkerton liability when conspiracy was not charged in indictment); United States v. Lopez, 271 F.3d 472, 480 (3rd Cir. 2001) ("[C]onspiracy need not be charged for Pinkerton's doctrine to apply."); United States v. Chairez, 33 F.3d 823, 827 (7th Cir. 1994) (same).

Even presuming *arguendo*, Petitioner had no advance knowledge of the gun, Petitioner remains liable under Pinkerton because the brandishing of a firearm by Mr. Milligan, his confederate, was reasonably foreseeable and in furtherance of the conspiracy. Certainly, it is no surprise that a hijacking would involve the brandishing of a firearm. Indeed, just two days before the Charger hijacking, Petitioner witnessed Mr. Milligan brandish a firearm during the BMW hijacking. Rule 11 Tr. 17-18; see United States v. Rodriguez, 591 F. App'x 897, 901 (11th Cir. 2015) (finding aiding and abetting jury instruction did not satisfy Rosemond, but upholding jury conviction under Pinkerton). Accordingly, Petitioner has not shown actual innocence.

### C. There Is No Need For an Evidentiary Hearing.

Section 2255 does not require that the Court hold an evidentiary hearing if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief. . . ." 28 U.S.C. § 2255(b). "A hearing is not required on patently frivolous claims or those which are based upon unsupported generalizations. Nor is a hearing required where

the petitioner's allegations are affirmatively contradicted in the record." Holmes v. United States, 876 F.2d 1545, 1553 (11th Cir. 1989) (citation omitted). Moreover, a petitioner is not entitled to an evidentiary hearing where he asserts "merely conclusory allegations unsupported by specifics or contentions that in the face of the record are wholly incredible." Tejada v. Dugger, 941 F.2d 1551, 1559 (11th Cir. 1991) (citation omitted); see also Lynn v. United States, 365 F.3d 1225, 1238-39 (11th Cir. 2004). Because Petitioner's claims are procedurally barred, lack merit as a matter of law, or are otherwise affirmatively contradicted by the record, no evidentiary hearing is necessary.

### III. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** that the § 2255 motion be **DENIED** without an evidentiary hearing, that this civil action be **CLOSED**, and that a final judgment be **ENTERED** in favor of Respondent.

SO REPORTED and RECOMMENDED this 6th day of July, 2016, at Augusta, Georgia.

BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA